## LEWIS *v.* CITY OF SHREVEPORT.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF LOUISIANA.

Decided April 16th, 1883.

*Municipal Bonds—Municipal Corporations—Ratification.*

1. *Ottawa* v. *Cary, ante,* 110, reaffirmed.
2. Unless power has been given by the legislature to a municipal corporation to grant pecuniary aid to railroad corporations, bonds issued for that pur-

pose, and bearing evidence of the purpose on their face, are void; even in the hands of *bona fide* holders.

3. Corporate ratification, without authority from the legislature, cannot make a municipal bond valid, which was void when issued for want of legislative power to make it.

Action to recover interest due on municipal bonds issued in aid of a railway. Defence that the charter of the municipality and the laws affecting it conferred no power to issue such bonds, and that the bonds were issued without authority and are void. The charter of Shreveport contained no express authority for the issue of such bonds. The parties agreed to the facts on the hearing below. The following are the most material parts of that agreement:

" 2. That on the 26th of June, 1872, an ordinance was introduced and passed by the city council of Shreveport, authorizing purchase of real estate by the city to be donated to the Texas & Pacific Railway Company, upon which depots and machine shops were to be permanently established and maintained by said company, and providing that for purchase of said property 260 forty-year $1,000.00 bonds should be issued and sold on market, said bonds bearing interest at rate of 8 % per annum, payable semi-annually, with coupons attached; providing further that said ordinance should be submitted to the vote of the people for their ratification and approval, and it is admitted that said ordinance was never considered by said council on any other day prior to said 26th June, 1872, and that it further provided for levying a tax to pay interest and create a sinking fund for redemption of bonds.

" 3. That, in pursuance of said ordinance, an election was held in said city on July 1st, 1872, and said ordinance was then and there ratified and approved by the voters, 705 votes being cast for said ordinance and 3 against it.

" 4. That in pursuance of said ordinance and said vote ratifying same, the said city issued 260 bonds, each for $1,000, payable at 40 years, bearing interest at 8 %, payable semi-annually, with interest coupons attached, said bonds bearing date July 1st, 1872, a copy of which said bonds is attached to and made part of plaintiff's petition, a copy of coupons attached to said bonds being set out in and made a part of plaintiff's petition.

"17. That plaintiff acquired ninety of said bonds with coupons attached, in open market, being bonds to which the interest coupons sued on belong, paying therefor 85 cents on the dollar, and that said plaintiff is *bona fide* holder of said bonds and of interest coupons sued on for value.

"18. It is admitted that the Texas & Pacific Railway Company has not now and never had any charter from the State of Louisiana, or any right arising from any statute of that State passed in favor of said company, but that said company held a lease from the Vicksburg, Shreveport & Texas R. R. Co., not yet expired, of the railroad from Shreveport to Texas line.

"19. It is admitted that the ordinance of June 26th, 1872, is the only ordinance of said city authorizing the issue of said 260 forty-year bonds."

The court below held that the bonds were issued without lawful authority, and were null and void. The plaintiff below excepted, and brought the case on error here.

*Mr. William M. Grant* for plaintiff in error.—I. It was the general policy of the State of Louisiana to allow municipal corporations to purchase, hold, and dispose of real property to the same extent as individuals, without express grants. *Edey* v. *Shreveport*, 26 La. Ann. 636. This case shows that the discretion of the city council extended even to a donation to the Texas & Pacific Railroad Company, a foreign corporation. —II. Where a corporation is authorized to do any act and no mode is pointed out for its exercise, it may adopt any which in its judgment will best secure the purpose contemplated. *Southern Life Ins. & Trust Company* v. *Lanier*, 5 Fla. 110; *City of Galena* v. *Corwith*, 48 Ill. 423; *State Board* v. *Citizens, &c., Railway Company*, 47 Ind. 407. The power in a municipal corporation to purchase carries with it power to incur indebtedness for the purchase money, and to issue its negotiable obligations promising to pay the indebtedness at a future day. *The People* v. *Brennan*, 39 Barb. 522–45; 1 Dillon on Municipal Corporations, 3d ed., § 117, p. 144; Daniel on Negotiable Instruments, vol. 2, p. 461; *Mills* v. *Gleason*, 11 Wis. 470; *Bank* v. *Chillicothe*, 7 Ohio, 354; *State ex rel. Dean* v. *Madi-*

*son*, 7 Wis. 688; *Clark* v. *School District*, 3 R. I. 199; *Ketchum* v. *Buffalo*, 14 N. Y. 356, holding that municipal corporations generally have the power to issue bonds and notes without express authority. See also *Commonwealth* v. *Pittsburg*, 41 Penn. St. 278; *Douglas* v. *Virginia City*, 5 Nevada, 147; *Moss* v. *Harpeth Academy*, 7 Heisk. 283; *Adams* v. *Memphis*, &c., *Railroad Company*, 2 Cold. 645; *The Evansville*, &c., *Railroad Company* v. *Evansville*, 15 Ind. 395; *City of Galena* v. *Corwith*, 48 Ill. 423; *Miller* v. *The Board*, 66 Ind. 162.—III. When the power of taxation is given merely as an incident to enable the corporation to carry out the usual purposes of its organization, and it is authorized to do other and independent things which require the use of money, it may, when not expressly prohibited, borrow money and give evidences of indebtedness therefor. *Williamsport* v. *Commonwealth*, 84 Penn. St. 487; *Mills* v. *Gleason*, 11 Wis. 470; *Bank* v. *Chillicothe*, 7 Ohio, 354; *Board* v. *Day*, 19 Ind. 450; *Lynde* v. *The County*, 16 Wall. 6; *Police Jury* v. *Britton*, 15 Wall. 566. Power to borrow money is almost universally conceded to carry, by implication, authority to a municipal corporation to issue bonds and other securities. *Commonwealth* v. *Pittsburg*, 34 Penn. St. 496; *The Evansville*, &c., *Railroad Company* v. *Evansville*, 15 Ind. 395; *Middletown* v. *Alleghany Co.*, 37 Penn. St. 237; *Reinboth* v. *Pittsburg*, 41 Penn. St. 278; *Seybert* v. *Pittsburg*, 1 Wall. 272; *Rogers* v. *Burlington*, 3 Wall. 654; *De Voss* v. *Richmond*, 18 Gratt. (Va.) 338; *City of Galena* v. *Corwith*, 48 Ill. 423; *Williamsport* v. *Commonwealth*, 84 Penn. St. 487; *Kelly* v. *Mayor*, 4 Hill, 263; *Police Jury* v. *Britton*, 15 Wall. 572; *Milner's Administrators* v. *Pensacola*, 2 Woods, 632; *Mayor* v. *Inman*, 57 Ga. 370; *Tucker* v. *Raleigh*, 75 N. C. 267; *Mercer Co.* v. *Hacket*, 1 Wall. 83; *Meyer* v. *Muscatine*, 1 Wall. 384; *Lynde* v. *The County*, 16 Wall. 6.—IV. The charter of the city authorized it to build structures of public necessity and utility. The money given to the company was to enable it to erect depot buildings and machine shops, which are of public utility. The purpose was a lawful one, and as the bonds recite it on their face the city is estopped from showing that they were not issued for

that purpose. *Hacket* v. *Ottawa*, 99 U. S. 86; *Ottawa* v. *National Bank*, 105 U. S. 342.—V. There was no prohibition against granting this aid to a foreign corporation. The result was the same to it as if the railroad company had been a Louisiana company, and the same rule of law applies as though it had been. *Railroad Company* v. *Otoe County*, 16 Wall. 667; *Walker* v. *Cincinnati*, 21 Ohio St. 14; *Sharpless* v. *The Mayor*, 21 Penn. 147; *Quincy, &c., Railroad Company* v. *Morris*, 84 Ill. 410.—VI. In any event the city has acted upon it, and obtained the money, and its action has been ratified by the voters.

*Mr. B. F. Jonus* for defendant in error.

Mr. Chief Justice Waite delivered the opinion of the court.

This was a suit brought to recover the amount of certain coupons cut from bonds issued by the city of Shreveport, Louisiana, which appear on their face to have been issued "in aid of the Texas & Pacific Railroad Company." In point of fact, the bonds were used to buy lands to be donated to the railroad company as a site for depots and machine shops.

We have had occasion, at this term, in the case of *City of Ottawa* v. *Cary* (*ante*, 110), to repeat and apply a rule which has always been recognized and adhered to in this court, to the effect, that unless power has been given by the legislature to a municipal corporation to grant pecuniary aid to railroad corporations, all bonds of the municipality, issued for such a purpose, and bearing evidence of the purpose on their face, are void even in the hands of *bona fide* holders, and this whether the people voted the aid or not. Every purchaser of such a bond is chargeable in law with notice of the want of power in the municipal authorities to bind the body politic in that way. This principle is elementary.

In the present case it is not pretended that any such power was expressly granted to the city of Shreveport, and we find no provision of the charter from which anything of the kind can be implied. The authority to purchase and hold property of all kinds relates only to such property as is needed for mu-

nicipal purposes.   It is a matter of no importance that the city employed agents to sell the bonds, or that its law officer gave an opinion in favor of their validity, or that they have been recognized in official statements as binding obligations, or that taxes have been levied to pay either principal or interest.   Corporate ratification, without authority from the legislature, cannot make a municipal bond valid which was void when issued for want of legislative power to make it.   These bonds carried on their face full notice to every purchaser that they were issued for a purpose not authorized by law, that is to say, to aid a railroad corporation.   This whole subject was so fully considered in *City of Ottawa* v. *Cary, supra,* 110, that we deem it unnecessary to discuss the subject further now.

In *Edey* v. *Shreveport,* 26 La. Ann. 636, which is relied upon as establishing the power of the city to issue the bonds, the question was whether the vendor of the land, which had been only partly paid for out of the proceeds of the bonds, could enforce his mortgage and vendor's privilege on the land to recover the balance of purchase money due him, and it was decided that he could.   This is no more than was in effect held by this court at the present term in *City of Parkersburg* v. *Brown,* 106 U. S. 487.   All that was said by the Supreme Court of Louisiana must be construed in connection with the question then up for decision.   There is not a word about the validity of the outstanding bonds, nor of the right of the holders to recover upon them in a suit against the city.   The whole effect of the decision is that the city could not keep the land as against the vendor without paying for it.   That the court would have held the bonds void, if it had been called on to decide that question, is shown beyond all doubt in the case of *Wilson* v. *Shreveport,* 29 La. Ann. 673, where the power to issue bonds, apparently of a much less objectionable character, was expressly denied.

*The judgment is affirmed.*